MFD: USAO 2021R00249
JTM 10.22.21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. ELH 21cr432 |
| | * | |
| v. | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Theft of Government Property, 18 |
| WILLIAM RASHEEM JAMAL RICH, | * | U.S.C. § 641; Aiding and Abetting, |
| | * | 18 U.S.C. § 2; Forfeiture |
| Defendant. | * | Allegations) |

******

## INDICTMENT

### COUNTS ONE THROUGH FIVE

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant:

1. The U.S. Department of Veterans Affairs (VA) administered the Disability Compensation program, a tax-free monetary benefit paid to veterans with disabilities that are the result of a disease or injury incurred or aggravated during active military service. The VA rated the level of service-connected disability of veterans on a scale of 0% to 100%. In calculating the rating, the VA considered the average detriment to a veteran's earning capacity caused by each disability a veteran claimed. The amount of disability compensation a veteran received was commensurate with their service-connected disability rating.

2. The VA also operated the Caregiver Assistance Program which paid a monthly stipend to family members who resided with and served as caregivers to veterans who had a serious injury, psychological trauma, or other mental disorder, that was related to their active-duty

service, and who needed personal care because they could not perform everyday activities.

3. The VA also administered the Special Monthly Compensation (SMC) program, which paid a higher rate of disability compensation to qualifying veterans due to special circumstances such as the need of aid and attendance by another person or a specific disability, such as loss of use of arms or legs.

4. Defendant **WILLIAM RASHEEM JAMAL RICH ("RICH")**, was a resident of Maryland.

## THE SCHEME TO DEFRAUD

5. **RICH** engaged in a scheme to defraud wherein he feigned paralysis while attending VA medical appointments, and made false statements to the VA that he was confined to a wheelchair in order to obtain from the VA medical treatment, various forms of monthly compensation to include disability compensation, SMC, and reimbursement for an in-home caregiver, as well as funds for home and vehicle adaptations. In total, **RICH** received over $767,000 in benefits from the VA to which he was not entitled.

6. In particular, while deployed to Baqubah, Iraq in the United States Army in August 2005, **RICH** was injured when a bomb was detonated inside a dining facility where **RICH** was located. As a result of his injuries, **RICH** suffered temporary paralysis from the waist down, as well as incontinence, among other things.

7. At least six weeks after the incident, **RICH** showed signs of recovery. In a report written in October 2005, a treating physician noted that an August 2005 MRI showed "no [spinal] cord impingement and no [spinal] cord abnormalities." The physician further noted **RICH** was no longer incontinent, and that "[**RICH**'s] paralysis has resolved somewhat and at present he is able to move his lower extremities..." The physician also stated that **RICH** was able to walk short distances in parallel bars and was ultimately expected to recover to the point at which he would be

capable of working. Moreover, a December 5, 2006 report of a functionality evaluation indicated **RICH** was able to perform certain essential daily activities with "complete independence" or "modified independence" such as using the restroom and "locomotion."

8. Nevertheless, records from a subsequent "Compensation and Pension Examination" dated April 13, 2007 stated that **RICH** "complain[ed] of loss of sensation of his body from the navel down," and relied on a wheelchair.

9. Records from another benefits-related medical exam conducted on October 11, 2007 stated, "Since [**RICH**'s] accident, he has been paralyzed in both lower extremities; has been confined to a wheelchair and has no control of bowel, or bladder." The examining physician noted "the patient arrives in a wheelchair and cannot arise from. He cannot stand or ambulate even with maximal assistance." Records indicate the physician did not order X-rays to confirm **RICH**'s apparent condition, because he "did not feel that it was worth the trauma to him of manipulating him around for x-ray." Further, the physician noted "he did not have access to **RICH's** complete claims file to review **RICH**'s medical history or observe the earlier, contradictory report.

10. Based on these and other examinations, **RICH** was granted permanent disability from VA, and began receiving benefits payments to which he was not entitled beginning in November 2007.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

11. It was a part of the scheme to defraud that **RICH** would appear for medical treatment at VA or VA-affiliated facilities in a wheelchair, despite the fact that **RICH** was fully capable of walking and did not rely on a wheelchair.

12. It was further a part of the scheme to defraud that **RICH** falsely represented to VA medical staff and to VA customer service staff that he was paralyzed and required a wheelchair.

3

13. It was further a part of the scheme to defraud that **RICH** received and spent funds from the VA for an in-home caregiver due to his purported paralysis, when he was not in fact paralyzed.

14. It was further a part of the scheme to defraud that **RICH** sought and received medical treatment and durable medical equipment including a wheelchair and a stairlift from the VA for his purported condition in order to continue to deceive the VA about his physical condition.

15. It was further a part of the scheme to defraud that **RICH** applied for and spent funds from the VA for the purchase of a vehicle specially adapted to his purported condition, which he used for the purchase of a BMW 645ci luxury sports car.

16. It was further a part of the scheme to defraud that, because of his false representations concerning his physical condition, **RICH** received monthly benefit payments from the VA to which he was not entitled by way of direct deposit. Payments were transmitted from the VA's Corporate Database in Austin, Texas, to **RICH**'s account at Wells Fargo Bank in Minneapolis, Minnesota, over wires in interstate commerce.

## The Charges

17. Beginning in or about April 2007 and continuing through in or about October 2021, in the District of Maryland, the defendant,

**WILLIAM RASHEEM JAMAL RICH,**

for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

4

| Count | Date (on or about) | Description of Wire |
|---|---|---|
| One | May 19, 2021 | June 2021 benefits payment in the amount of $8,490.77 which originated at the VA Corporate Database in Austin, Texas, and was transmitted by wire in interstate commerce to the to the Benefits Delivery Network in Chicago, Illinois, and then retransmitted to the U.S. Treasury processing center in Kansas City, Missouri, and then to the Federal Reserve Bank ACH processing site, located in East Rutherford, New Jersey, and then to **RICH**'s Wells Fargo Bank checking account ending in 3582, located in Minneapolis, Minnesota on June 1, 2021. |
| Two | June 18, 2021 | July 2021 benefits payment in the amount of $8,490.77 which originated at the VA Corporate Database in Austin, Texas, and was transmitted over interstate wire to the to the Benefits Delivery Network in Chicago, Illinois, and then retransmitted to the U.S. Treasury processing center in Kansas City, Missouri, and then to the Federal Reserve Bank ACH processing site, located in East Rutherford, New Jersey, and then to **RICH**'s Wells Fargo Bank checking account ending in 3582, located in Minneapolis, Minnesota on July 1, 2021. |
| Three | July 20, 2021 | August 2021 benefits payment in the amount of $8,490.77 which originated at the VA Corporate Database in Austin, Texas, and was transmitted over interstate wire to the to the Benefits Delivery Network in Chicago, Illinois, and then retransmitted to the U.S. Treasury processing center in Kansas City, Missouri, and then to the Federal Reserve Bank ACH processing site, located in East Rutherford, New Jersey, and then to **RICH**'s Wells Fargo Bank checking account ending in 3582, located in Minneapolis, Minnesota on July 30, 2021. |
| Four | August 20, 2021 | September 2021 benefits payment in the amount of $8,490.77 which originated at the VA Corporate Database in Austin, Texas, and was transmitted over interstate wire to the to the Benefits Delivery Network in Chicago, Illinois, and then retransmitted to the U.S. Treasury processing center in Kansas City, Missouri, and then to the Federal Reserve Bank ACH processing site, located in East Rutherford, New Jersey, and then to **RICH**'s Wells Fargo Bank checking account ending in 3582, located in Minneapolis, Minnesota on September 1, 2021. |

| Five | September 21, 2021 | October 2021 benefits payment in the amount of $8,490.77 which originated at the VA Corporate Database in Austin, Texas, and was transmitted over interstate wire to the to the Benefits Delivery Network in Chicago, Illinois, and then retransmitted to the U.S. Treasury processing center in Kansas City, Missouri, and then to the Federal Reserve Bank ACH processing site, located in East Rutherford, New Jersey, and then to **RICH**'s Wells Fargo Bank checking account ending in 3582, located in Minneapolis, Minnesota on October 1, 2021. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT SIX
(Theft of Government Property)

The Grand Jury for the District of Maryland further charges that:

1. The allegations of Paragraphs 1 through 16 of Counts One through Five are incorporated here.

2. Between in or about November 2007 and in or about October 2021, in the District of Maryland, the defendant,

**WILLIAM RASHEEM JAMAL RICH,**

did embezzle, steal, purloin, and knowingly convert to his use and the use of another, money of the United States, whose value exceeded $1,000, namely funds, medical treatment, and medical equipment from the Department of Veterans Affairs to which he was not entitled.

18 U.S.C. § 641
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on any of the offenses charged in Counts One through Six of this Indictment.

2. Upon conviction of any of the offenses set forth in Counts One through Six of the Indictment, the defendant,

**WILLIAM RASHEEM JAMAL RICH,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $767,000.

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or,

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_E. Barron / M.O._
Erek L. Barron
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: October 27, 2021