IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| WILLIAM RASHEEM JAMAL RICH, | * | Criminal No. 21-0432-BAH |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Defendant William Rasheem Jamal Rich has been charged with five counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of theft of government property in violation of 18 U.S.C. § 641.  ECF 14, at 5–7.  The Government has filed a motion in limine seeking "to prohibit the defendant from arguing that the Government, or any person, including, any staff member or official with, or affiliated with, the United States Department of Veterans Affairs, encouraged him to commit fraud as a defense to any counts in the Indictment."  ECF 62, at 1.  The Defense opposes the motion, ECF 75, and the Government filed a reply in support, ECF 78.[1]  At a hearing on a different motion on May 9, 2024, the Defense clarified that it intended to move in its opposition for admission of certain parts of Defendant's recorded prior statement under Federal Rule of Evidence 106.  *See* ECF 75.  I have reviewed all relevant filings and find that no additional hearing is necessary.[2]  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, the

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] At the motions hearing on May 9, 2024, there was a brief discussion of this motion, but there was not substantial argument regarding it.  No additional oral argument is necessary.

Government's motion in limine, ECF 62, is **DENIED**, and Defendant's motion for admission under Federal Rule of Evidence 106 is also **DENIED**.

## I.    <u>THE PARTIES' ARGUMENTS</u>

The Government argues that Defendant should be prohibited from arguing that any Veterans Affairs ("VA") doctors or other officials advised him to misrepresent the extent of his disabilities in order to receive increased government benefits under Federal Rules of Evidence 401 and 403. ECF 62, at 2–3. The Government notes specific statements made by Defendant during a recorded interview with Special Agents from the VA and the Office of the Inspector General ("OIG") on October 13, 2021, in which Defendant "admitted that he made statements, or took actions, to misstate or exaggerate the length and/or actual presence of one or more disabilities." *Id.* at 1. In the interview, Defendant claimed that he made those statements "because doctors (presumably from the Department of Veteran's Affairs), advised him to do so to receive more Government funds" and that those "doctors 'could not go on the record to advise him' but told him this is how the 'game is played.'" *Id.* at 1–2.

The Government now asserts that these statements, "or any similar statements by the defendant[] or his counsel should be prohibited" either because they are irrelevant under Federal Rule of Evidence 401 or because they risk unfair prejudice to Defendant and excessive confusion of the jury that substantially outweighs the probative value of the evidence. ECF 62, at 2–3. According to the Government, Defendant "was over the age of 18 and capable of deciding to follow or not follow possible statements made by a medical provider" during the relevant time period and, therefore, any alleged advice given to him by doctors or other VA officials is irrelevant. *Id.* at 2. "[T]he possibility that a doctor from Veteran's Affairs, or some other entity, advised the defendant, off the record, to misstate or exaggerate his disabilities does not negate the defendant's criminal intent to commit wire fraud and theft of government property." *Id.* at 3.

Additionally, the Government argues, "the risk of unfair prejudice is highly likely for the defendant" because the introduction of such statements would require the Defense to explain that the doctors refused to advise Defendant on the record, and such an explanation "suggests some form of illegal activity" and could "lead jurors to infer that in choosing to follow such recommendations, the defendant knew that misstating or exaggerating his disabilities was against the law."  ECF 62, at 2.  Furthermore, the Government asserts that the introduction of these statements "may confuse or mislead jurors by creating an implication that the Government bears responsibility for the defendant's actions."  *Id.*

The Defense mentions neither Federal Rule of Evidence 401 nor Federal Rule of Evidence 403 in its opposition.  *See* ECF 75, at 1–7.  Instead, the Defense argues that the statements regarding the VA doctors' alleged advice to Defendant should not be excluded as hearsay because the statements qualify as statements made for the purpose of medical diagnoses or treatment under Federal Rule of Evidence 803(4), *id.* at 3–4, and that the rule of completeness captured in Federal Rule of Evidence 106 requires that I admit these exculpatory statements if the Government introduces other portions of the October 13, 2021, interview, *id.* at 4–6.  The Defense asks that the statements regarding the doctors' alleged advice from the October 2021 interview be admitted "should counsel cross examine the agents on [Defendant] Mr. Rich's statement and permit [Defendant] Mr. Rich to testify to it should he testify at trial."  *Id.* at 3.

## II.    <u>LEGAL STANDARDS</u>

Federal Rule of Evidence 401 provides that evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining" the case at hand.  Federal Rule of Evidence 402, in turn, provides that "[r]elevant evidence is admissible" unless otherwise prohibited.  "The governing hypothesis of any criminal prosecution, for the purpose of determining relevancy of evidence introduced,

consists of elements of the offense charged and any relevant defenses raised to defeat criminal liability." *United States v. Walker*, 32 F.4th 377, 388 (4th Cir. 2022) (quoting *United States v. Lamberty*, 778 F.2d 59, 60–61 (1st Cir. 1985)), *cert. denied*, 143 S. Ct. 450, 214 L. Ed. 2d 256 (2022).

While relevant evidence is generally admissible, Federal Rule of Evidence 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[T]he balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996).

Hearsay, no matter how relevant or probative, is not admissible unless an exception or exemption applies. Fed. R. Evid. 802. Hearsay is any statement made by an out-of-court declarant offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Federal Rules of Evidence enumerate several exceptions and exemptions to the hearsay prohibition, including statements made for the purpose of medical diagnosis or treatment. Fed. R. Evid. 803(4). To qualify under this exception, the statement must be "made for—and reasonably pertinent to— medical diagnosis or treatment" and must "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.* "This exception to the hearsay rule is premised on the notion that a declarant seeking treatment 'has a selfish motive to be truthful because the effectiveness of medical treatment depends upon the accuracy of the information provided.'" *Willingham v. Crooke*, 412 F.3d 553, 562 (4th Cir. 2005) (citation omitted). Whether a statement should be admitted under this exception is evaluated using a two-part test: "(1) the declarant's motive in making the statement must be consistent with the purposes of promoting

treatment; and, (2) the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Morgan v. Foretich*, 846 F.2d 941, 949 (4th Cir. 1988) (citation and internal quotation marks omitted).

The final evidentiary rule cited directly by the parties, Rule 106, codifies the common law rule of completeness: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72 (1988) ("The Federal Rules of Evidence have partially codified the doctrine of completeness in Rule 106"). In 2023, this rule was amended to include a provision that specifically allows an adverse party to introduce material for completeness "over a hearsay objection." Fed. R. Evid. 106; Fed. R. Evid. 106 advisory committee's note to 2023 amendment.

## III.   ANALYSIS

These filings implicate several different scenarios, all of which involve unique considerations. First, there are two different types of content the Government moves to exclude: (1) the specific statements Defendant made during the October 13, 2021, interview stating that VA doctors or officials encouraged him to misreport his disability, and (2) any other statements or arguments to that effect. ECF 62, at 1–2. Additionally, there are two levels of potential hearsay: (1) the alleged statements made by doctors or agency officials, and (2) the October 13, 2021, statements made by Defendant himself. *See* ECF 62, at 1–2 (describing Defendant's statements describing doctors' statements); ECF 75, at 4 (acknowledging this situation as "double hearsay"); *see also* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). The question of whether Defendant should be permitted to introduce the entirety of his recorded interview from October 13, 2021, under the rule of completeness in federal Rule of Evidence 106 requires

independent analysis, as well. This discussion will address each of these variables and their potential implications in turn.

###### A. Any statement claiming that a doctor or other agency official told Defendant to misreport his disability is relevant and the probative value outweighs considerations of prejudice and confusion.

Defendant does not address the Government's assertions that any statement relating to Defendant's claim that VA doctors told him to misreport his disability status is irrelevant or overly prejudicial or confusing, impliedly asserting that the relevance and relative probative value of the evidence are obvious. ECF 75, at 1–7 (mentioning neither argument). Though I caution the parties that failure to assert an argument can result in the waiver of that argument, any statement regarding Defendant's doctors' advice as to reporting his disability is clearly relevant. Wire fraud, as criminalized in 18 U.S.C. § 1434, is a specific intent crime. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) ("The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud."); *see also United States v. Redmond*, 461 F. App'x 317, 318 (4th Cir. 2012) (unreported) ("To establish a scheme to defraud, the Government must prove beyond a reasonable doubt that [the defendant] acted with the specific intent to defraud . . . ."). An argument that a defendant was acting in good faith reliance upon the advice of an expert goes directly to the mens rea element of a specific-intent offense and is, therefore, relevant. *United States v. Stevens*, 771 F. Supp. 2d 556, 566 (D. Md. 2011) ("The Fourth Circuit has also acknowledged that the good faith reliance on the advice of an expert negates a defendant's mens rea . . . ." (citing *United States v. Miller*, 658 F.2d 235, 237 (4th Cir. 1981))); *United States v. Okun*, Crim. No. 8-132, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009) (explaining that expert advice can be relevant to the question of specific intent in wire fraud when a defendant allegedly relied on that advice).

The Government attempts to analogize this case to *United States v. Gaver*, Crim. No. RDB-17-0640, 2018 WL 3475455 (D. Md. July 19, 2018). ECF 62, at 2–3. In *Gaver*, Judge Bennett found the defense's proposed evidence of the victim bank's negligence to be inadmissible in considering bank fraud charges against the defendant. *Gaver*, 2018 WL 3475455, at *2–3. Judge Bennett concluded that the defendant could "not argue that the negligence or actions of any [] Bank personnel negates his own criminal intent." *Id.* at *3. But this case is not analogous to *Gaver*. There, it was unclear what defense theory evidence of the bank's alleged negligence would support. *Id.* at *1. Judge Bennett reasoned that the negligence of the bank would not impact the analysis of any of the elements of the case nor give rise to any additional defenses, as the negligence would not impact the assessment of the "materiality" of the defendant's misrepresentations, and there was no separate defense available. *Id.* at *2. He provided no explanation as to how the bank's negligence could not impact the consideration of the defendant's mens rea, but the reasoning there is self-evident: the defendant's intent to defraud the bank was not dependent upon the bank's negligence of lack thereof. *See id.* at *2–3. Here, the alleged statements regarding VA doctors' advice to Defendant bear directly on Defendant's state of mind and whether he developed the specific intent necessary to commit wire fraud. As such, this case is distinguishable from *Gaver*, and the comments in question are relevant. The Government's motion cannot be granted on the authority of Federal Rule of Evidence 401.

Nor can the motion be granted on the basis of Federal Rule of Evidence 403. That rule requires that the risk of undue prejudice or jury confusion *substantially outweigh* the probative value of the evidence. Fed. R. Evid. 403. Such is simply not the case here. First, the Government argues that the introduction of these statements would be unfairly prejudicial to the *Defendant* because the jury might infer that no doctor would go on record with this advice because it

encouraged illegal activity.  ECF 62, at 2.  The Government points to no case where a court excluded a piece of evidence based on the risk of prejudice to the nonmoving party.  *See id.* Furthermore, "undue prejudice occurs when there is 'a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"  *Aramony*, 88 F.3d at 1378 (quoting *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993)).  There is no suggestion here that the jury here would be "excited to irrational behavior"—only that they might draw a reasonable inference from the information presented to them which could cut against Defendant's case.  This does not amount to undue prejudice that substantially outweighs the probative value of the statements.

The risk of confusion also does not substantially outweigh the probative value of the statements.  The Government attempts to use *Gaver* as an analogy supporting its argument that the introduction of the challenged statements in this case should be excluded under Rule 403 for the possibility of confusing the jury, ECF 62, at 2–3, despite the fact that *Gaver* included no Rule 403 analysis, 2018 WL 3475455, at *1–3.  As such, the entirety of the Government's argument on this point is contained in one single sentence: "Further, allowing a jury to hear these statements may confuse or mislead jurors by creating an implication that the Government bears responsibility for the defendant's actions."  ECF 62, at 2.  This entirely unsupported argument must be weighed against the probity of the challenged evidence.  "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives."  *Old Chief v. United States*, 519 U.S. 172, 184 (1997).  Here, as the Government points out in its reply, the Defense has not made any suggestion that there is another source of evidence to support Defendant's assertion that he was advised to misrepresent his disability.  *See* ECF 78, at 5.  As such, the probative value of this evidence is very high.  *See United*

*States v. King*, 713 F.2d 627, 631 (11th Cir.1983) ("[T]he more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded."). The mere fact that the jury might have to distinguish the advice of individual doctors employed by the VA from the official sanctioning of conduct by the institution of the VA does not rise to the level of "substantially outweighing" the great probative value of the challenged statements. As such, the Government's motion should not be granted on the basis of Federal Rule of Evidence 403.

Because the Government based its motion entirely on the bases of Federal Rules of Evidence 401 and 403 and neither of those rules support the exclusion of the challenged statements, the Government's motion should be denied.

### B.  The alleged mystery doctors' statements are not hearsay because those statements will not be offered for the truth of the matter asserted.

An out of court statement is only hearsay if it is offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The statement can be offered for any other purpose without running afoul of the hearsay prohibition. *United States v. Gallagher*, 90 F.4th 182, 195 (4th Cir. 2024) ("If a statement is offered for any other reason [than the truth of the statement], it is not hearsay and may not be excluded on that basis."). Here, the doctors' statements telling Defendant to misrepresent his disability status will not be offered for their truth; they will instead be offered to demonstrate the impact they had on Defendant and his mens rea.[3] *See United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021) (finding that a statement offered for the effect on the listener was not hearsay). Furthermore, the statements by the doctors appear to have been commands, and, as such, it is likely that they do not even have an underlying truth value. *See, e.g.*, *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 251 (6th Cir. 2011) ("This statement is not hearsay because it

---

[3] Though the Defense never explicitly states that this is the purpose for which these statements will be offered, this is the context in which the statements are relevant, as noted above.

is a command, a verbal act without truth value."); ECF 75-1, at 2, 11:12–16 ("From the moment that I got injured[,] doctor said just stay in a chair . . . ."); *id.* at 7, 56: 14–16 ("Only thing I was ever told by, you know, hospital personnel is stay in your chair . . . ."). As such, the statements of the doctors are not hearsay, and they can be introduced on their own. [4]

As a result, should Defendant choose to testify to the statements made to him by the doctors, he can do so without running afoul of the rule against hearsay. The statements that Defendant himself made at the October 2021 interview regarding the doctor's advice, however, are another story. [5] Because the doctor's statements are nested within the Defendant's own out-of-court statements, they would still be barred by the rule against hearsay. *See United States v. Davis*, 75 F.4th 428, 437 n.9 (4th Cir. 2023) (explaining that exculpatory statement from prior conversation that the defendant sought to introduce would be hearsay).

### C. Defendant has not demonstrated that his October 13, 2021, statements regarding his doctors' advice should be admitted under Rule 106.

---

[4] The Defense argues that these statements should be exempt from the hearsay prohibition under FRE 803(4) as statements for the purpose of medical treatment. ECF 75, at 3–4. Because these statements are not offered for their truth, no exception need apply.

[5] It bears noting the statements made in the October 2021 interview are narrower than the potential testimony and argument flagged by the Government in its motion. *See* ECF 62, at 1 (characterizing Defendant's potential argument as one that some unknown VA doctors or other VA staff members "encouraged him to commit fraud" and that doctors "advised him to [misrepresent his disabilities] so to receive more Government funds"). For example, Mr. Rich repeatedly alleges that an unknown doctor or doctors told him to "stay in [his] chair." ECF 75-1, at 2, 6, 7. This would seem to address the narrower issue of why Mr. Rich appeared for his medical appointments in a wheelchair, *see* ECF 14 (Indictment), at 2, and not necessarily as to why he allegedly "made false statements to the VA that he was confined to a wheelchair." *Id.* Thus, the issue may not present itself at trial as Mr. Rich may not offer testimony that anyone "encouraged him to commit fraud" in the manner alleged in the indictment. ECF 62, at 1.

Of course, hearsay concerns do not derail the admission of an exculpatory statement under the rule of completeness.[6] Fed. R. Evid. 106 (allowing the introduction of material for the purposes of completeness "over a hearsay objection").  The rule of completeness is intended to prevent unfair misrepresentations that could occur when one party presents only a small subsection of a larger piece of evidence.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988) ("The opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." (citation omitted) (alterations omitted)); *United States v. Wilkerson,* 84 F.3d 692, 696 (4th Cir. 1996) ("[W]hen the rule does apply, its purpose is to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received.").  However, Rule 106 does not "require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party."  *Davis*, 75 F.4th at 436–37 (quoting *United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008)).  Courts generally interpret Rule 106 narrowly, and the Fourth Circuit has explained that "[t]he rule is protective, merely.  It goes only so far as is necessary to shield a party from adverse inferences, and only allows an explanation or rebuttal of the evidence received."  *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004) (quoting *United States v. Corrigan*, 168 F.2d 641, 645 (2d Cir.1948)).  "Rule 106 is not a device for a party to evade

---

[6] The Defense dedicates much of its opposition to arguing that Defendant's prior statements regarding his doctor's advice should not be excluded as hearsay from being admitted under Rule 106.  ECF 75, at 5–6 (citing to *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019), for the proposition that a hearsay statement can be admitted under Rule 106).  Since the amendment of Rule 106 to expressly permit the introduction of omitted contextual statements over hearsay objections, this point is settled.  Fed. R. Evid. 106.

testifying and facing cross-examination." *United States v. Todd*, No. 18-4161, 2022 WL 3210717, at *4 (4th Cir. Aug. 9, 2022).

In *Davis*, the Fourth Circuit found that Rule 106 did not permit the defendant to introduce an exculpatory statement he had made during the same conversation from which the prosecution pulled an incriminatory statement. 75 F.4th at 437. There, the defendant had made two statements on a recorded phone call regarding a gun found in his car: "I ain't want to talk about how the gun got in the car," (the inculpatory statement) and, "I told them people that, shoot, that none of that ain't mine. If it was mine, I would claim it" (the exculpatory statement). *Id.* at 432. The trial court allowed the prosecution to introduce the inculpatory statement but denied the defendant's request to introduce the exculpatory statement under Rule 106. *Id.* at 433. The Fourth Circuit explained that Rule 106 permits "a trial court [to] allow into the record 'relevant portions of excluded testimony which clarify or explain the part already received.' And that remedy 'prevent[s] a party from misleading the jury' by failing to introduce the aspects of a recording that 'in fairness ought to be considered at the same time.'" *Id.* at 436 (quoting *United States v. Bollin*, 264 F.3d 391, 414 (4th Cir. 2001)). The defense argued that, since the exculpatory statement directly contradicted the inference created by the inculpatory statement, it was unfair to not permit its introduction to contextualize the inculpatory statement. *Id.* But the Fourth Circuit found that the trial court did not abuse its discretion in finding the exculpatory statement to be a "self-serving, exculpatory statement[]" and therefore denying its admission. *Id.* at 436 – 37. According to the Fourth Circuit, the introduction of the exculpatory statement was not necessary to understand the introduced inculpatory statement. *Id.* at 437.

The Seventh Circuit considered a situation somewhat analogous to this case in *United States v. Li*, 55 F.3d 325 (7th Cir. 1995). In *Li*, the defendant was convicted of making improper

payments under a "kickback" scheme.  55 F.3d at 326.  In the district court, the government

introduced portions of a statement in which the defendant admitted to making the improper

payments.  *Id.* at 330.  The defense moved to introduce an excluded part of the statement "regarding

an alleged threat" to the defendant regarding the payments under Rule 106, and the district court

denied the motion.  *Id.*  On appeal, the Seventh Circuit found no error in this decision, and

explained that "[n]o statement regarding any alleged threat was necessary to explain or understand

Li's simple admission to making payments."  *Id.*

Here, the statements that the Government is likely to introduce from the October 13, 2021,

interview can fairly be categorized as "simple admission[s]" like those in *Li*.  *See* ECF 75-1, at 3,

14:9–15 ("[Special Agent] Beltran: You have some issue. . . .  But not to the extent that you have

claimed to VA?  I mean, that's what we're talking about, right?  I mean, let's just—right?  Mr.

Rich: Yeah.");  *id.* at 4, 25:16 ("Mr. Rich: Uh, yes, I can walk.").  The Defense has not articulated

any unjust misunderstanding that would result from the introduction of these statements on their

own.  *See* ECF 75, at 5–7 (stating that Defendant's statements about the doctors' advice "are

exactly the kind of statements Rule 106 is meant to address" but failing to elaborate on that

assertion).  Such a failure to explain the unfair prejudice the moving party would suffer from the

alleged misrepresentation has proved fatal to motions to include additional material under Rule

106 in the Fourth Circuit.  *See United States v. Harris*, 215 F. App'x 262, 276 (4th Cir. 2007)

(finding that the district court did not abuse its discretion because, although the defendant claimed

that admission of the portion of a statement was "extremely prejudicial," he did not "contend that

it was *unfairly* prejudicial" (emphasis in original)); *Todd*, 2022 WL 3210717, at *4 (finding that

the district court did not abuse its discretion in denying admission of exculpatory statements under

Rule 106 when the defendant "did not provide any argument as to *how* any of the excerpted

portions were misleading or out of context" (emphasis in original)); *United States v. Conto*, No. 20-4563, 2022 WL 228845, at *1 (4th Cir. Jan. 25, 2022) ("Conto has consistently failed to explain how any of the excerpted statements admitted at trial were misleading or lacking context. . . . Therefore, we conclude that the district court did not abuse its discretion."), *cert. denied*, 142 S. Ct. 2765 (2022).

One could argue that this case can be distinguished from *Li* in one key way: the Defense here has not forgone a defense based upon Defendant's state of mind.  In *Li*, the court found that "[t]he alleged threat may have helped place the statement in context and avoided misleading the jury if Li had pursued a coercion defense."  55 F.3d at 330.  Here, the Defense may mount an argument that Defendant did not intend to defraud the government based upon his doctor's advice, which could indicate that, unlike in *Li*, the exculpatory statement may "help[] place the statement in context and avoid[] misleading the jury."  *Id.*  But this argument still fails.  Defendant's statements regarding his doctors' advice do not suggest any threat of coercion or indicate that he was in any way forced to take the alleged actions.  Instead, they merely suggest background information to his thought process, and they do not clarify his simple admissions that he "can walk," ECF 75-1, at 4, 25:16, or that his disability was "not to the extent that [he had] claimed to VA," *id.* at 3, 14:9–15.  *See United States v. Bailey*, 322 F. Supp. 3d 661, 674 (D. Md. 2017) ("[J]udges have an obligation to carefully examine both the assertedly misleading information and the proffered completing information to insure that the evidence that was introduced requires clarification or explanation, and the proffered evidence is essential to clarify or explain.").  Defendant's motion for admission of his prior statements regarding his doctors' advice under Rule 106 is denied.

**IV.**  <u>**CONCLUSION**</u>

For the foregoing reasons, the Government's motion in limine, ECF 62, is **DENIED**.

Defendant's motion to introduce the statements he made during the October 13, 2021, interview

regarding his doctors' advice under Rule 106 is **DENIED**.

A separate implementing Order will issue.


Dated: <u>May 23, 2024</u>                                  /s/
                                                Brendan A. Hurson
                                                United States District Judge