IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | * | Criminal No. 21-0432-BAH |
| WILLIAM RASHEEM JAMAL RICH, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

The Government filed a notice that it intends to present opinion testimony by lay witnesses at trial or, in the alternative, that it intends to announce the witnesses named in its motion as experts.[1]  ECF 63.  I have reviewed this notice, Defendant's opposition, ECF 74, and Plaintiff's reply, ECF 79.  I have reviewed all relevant filings[2] and find that no hearing is necessary.[3]  *See* Loc. R. 105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, the Government's witness, Mr. Jesse Stout's opinion testimony as a lay witness will be permitted as described in the Government's reply at ECF 79.

I.   **THE PARTIES' ARGUMENTS**

Mr. Stout is an employee of the United States Department of Veterans Affairs ("VA"), where he works as a "Rating Quality Review Specialist."  *Id.*  The Government claims that Mr.

---

[1] Though the Government's initial notice mentioned two potential lay witnesses, Jesse Stout and Lisa C. Claxton, Defendant's opposition addresses only Mr. Stout, ECF 74, at 3; the Government's reply similarly addresses only Mr. Stout, ECF 79, at 2; and the Government made clear at a hearing on another motion on May 9, 2024, that it no longer intends to call Ms. Claxton as a witness.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] At the motions hearing on May 9, 2024, there was a brief discussion of this motion, but there was not substantial argument regarding it.  No additional oral argument is necessary.

Stout "will testify about the [D]efendant's VA file, the process for medical evidence review, the VA application, and rating decision process." ECF 63, at 2. According to the Government, this testimony will be based on Mr. Stout's "position, training, and experience." *Id.*

While Defendant does not challenge Mr. Stout's potential testimony regarding "the VA application," he asserts that Mr. Stout's proposed testimony regarding Defendant's VA file, the process for medical evidence reviews, and the "rating decision process" present "evidentiary problem[s]." ECF 74, at 3–4. Because only generalized information was provided about Mr. Stout's testimony in the Government's notice, Defendant's challenge rests on an assumption that Mr. Stout's testimony would involve "his interpretation of [medical] reports written by [] health care professionals." *Id.* at 4. Defendant reasons that, because Mr. Stout would be testifying based on a review of Defendant's medical records, he would not best testifying from his own "first-hand observations," but rather based upon his reading of observations documented by medical professionals. *Id.* at 4–5. Thus, any testimony based on an interpretation of Defendant's medical records would have to be expert testimony, and there is no suggestion that Mr. Stout is an expert qualified to opine on Defendant's medical history. *See id.* (suggesting that an expert could provide this testimony by specifying that a *lay person* is not permitted to testify in such a situation).

In its reply, the Government clarified Mr. Stout's proposed testimony, explaining for the first time that "[i]n October 2021, in a 16-page narrative decision, authored by Mr. Stout, he detailed why the defendant's disability rating was inaccurate and the overpayment amounts resulting from that erroneous classification." ECF 79, at 3. The Government further clarified that Mr. Stout will not "dispute the medical diagnosis or findings of any doctor who treated" Defendant; rather "[t]he opinion portion of Mr. Stout's testimony will explain that had the defendant been honest about his abilities to use his lower extremities, his VA rating decision would have been

different, and how the defendant's concealment of his physical abilities resulted in an overpayment by the VA." *Id.* at 3–4. The remainder of Mr. Stout's testimony will serve to "explain the VA's rating system generally, and how the VA used medical records, from within its agency, to develop a rating decision for the defendant." *Id.* at 3.

## II.   ANALYSIS

It is common for courts to allow lay testimony from professionals describing their firsthand observations in the context of their job. *See, e.g., MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) (holding that bookkeeper witness should have been permitted to testify to profit calculations as a lay witness "on the basis of records kept by her personally under her control, and her projection of profits under the lease as prepared by her was predicated on her personal knowledge and perception"); *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575–76 (4th Cir. 2017) (finding that the plaintiff's employee "responsible for store design, store construction, and facilities" could opine as a lay witness on construction costs of redesigning store layout because his testimony "described past Lord & Taylor renovation projects, outlined the kinds of changes necessitated . . . , and explained the increased construction costs customarily associated with renovations to a store that remains open for business" based on "his 'previous experience' and 'personal knowledge and perception'"). *But see TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400–01 (4th Cir. 1994) (finding that the district court erred in admitting lay testimony of project manager as to what he believed caused a construction project to fail when the witness "performed his job as project manager based upon the reports he received from his staff, whom [he] testified were his 'eyes and ears in the field'" because the witness's "proposed testimony, therefore, could not have been based on his own perceptions"). As the Government points out, a similar line of reasoning is often applied to law enforcement officers. ECF 79, at 4; *see, e.g., United States v. Walker*, 885 F. Supp. 2d 814, 820 (E.D. Va. 2012) (finding no error when

3

magistrate judge allowed lay testimony from police officer who testified that the defendant was "traveling at 'a high rate of speed,' approximately '70 miles an hour'" because the officer's testimony was based on his "significant patrol experience" and personal observations).

Here, it is undeniable that some of the data underlying Mr. Stout's report on Defendant's erroneous disability classification are scientific, medical reports. However, Mr. Stout personally reviewed the entirety of Defendant's file and himself authored a "16-page narrative decision" regarding Defendant's disability status. ECF 79, at 3. This reviewing of files and drafting of reports was part of Mr. Stout's job, which he has performed for nearly eight years. ECF 79-1, at 2–3. Thus, while Mr. Stout will not be permitted to testify to the meaning of the underlying medical reports or documentation, he can describe his own process in drafting his report based on his "previous experience," "personal knowledge," and "perception." *See Lord & Taylor, LLC*, 849 F.3d at 575–76. Mr. Stout's testimony will be permitted as described in the Government's reply at ECF 79. Should Mr. Stout's testimony stray from his own personal involvement and process in developing his report on Defendant, however, this decision will be reevaluated.

### III.  CONCLUSION

For the foregoing reasons, the Government will be permitted to introduce Mr. Stout as a lay witness and elicit his opinion testimony as described in ECF 79.


Dated: May 23, 2024                                        /s/
                                                  Brendan A. Hurson
                                                  United States District Judge