## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      *

v.      *

     *      Criminal No. 21-0432-BAH

WILLIAM RASHEEM JAMAL RICH,      *

     Defendant.      *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Defendant William Rasheem Jamal Rich is charged with five counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of theft of government property in violation of 18 U.S.C. § 641. ECF 14, at 5–7. Trial is scheduled to begin in less than one week, a fact known to the parties since August 29, 2023. ECF 56, at 1. The Defense previously filed a motion to suppress Mr. Rich's October 13, 2021, statement to law enforcement officers. ECF 71.[1] The Government opposed the motion. ECF 77. An evidentiary hearing was held on this motion on May 9, 2024. ECF 80. On May 23, 2024, I issued a Memorandum Opinion denying the motion. ECF 89.[2] Yesterday, over two weeks after the motion was denied, Mr. Rich filed a Motion to Reopen the Motions Hearing. ECF 100. For the reasons stated below, the Motion is **DENIED**.

---

[1] The Motion to Suppress was filed on April 19, 2024, almost a year and half after present counsel was appointed to represent Mr. Rich and after Mr. Rich had represented that he did not intend to file any motions. ECF 69, at 3 ¶ 11. I granted Mr. Rich leave to belatedly file the motion over the Government's objection. ECF 72.

[2] The Defense's original version of the motion, ECF 70, also filed on April 19, 2024, was denied as moot since it was supplanted by a corrected version filed at ECF 71.

Whether to reopen a suppression hearing is a matter of discretion for the trial court. *United States v. Harris*, PWG-13-202, 2014 WL 5797762, at *3 (D. Md. Nov. 6, 2014) (citing *United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir.1999), *rev'd on other grounds*, 530 U.S. 428 (2000)). In exercising my discretion on this matter, the Fourth Circuit has cautioned against permitting "piecemeal litigation" and has held that:

> [W]hen the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing, . . . the movant must provide a legitimate reason for failing to introduce that evidence prior to the district court's ruling on the motion to suppress before [it] will determine that a district court abused its discretion in refusing to reconsider its suppression ruling.

*Id.* (citing *Dickerson*, 166 F. 3d at 679). "The movant also must show that the evidence sought to be introduced is material—that is, that there is a reasonable probability that it would have changed the disposition of the motion to suppress." *Id.* (citing *United States v. McCoy*, 348 F. App'x 900, 902 (4th Cir. 2009)).

As to the evidence he seeks to introduce at a reopened hearing, Mr. Rich points to the proffered testimony of his prior counsel. ECF 100, at 2. Specifically, Mr. Rich alleges that prior counsel will confirm that Mr. Rich previously told her that "one of the agents had told [Mr. Rich] while in his basement that [the mother of his child] could be arrested and charged with criminal offenses and [Mr. Rich's] children would have to be placed in someone's custody." *Id.* Since prior counsel stopped representing Mr. Rich in April of 2023, this statement was unquestionably known to Mr. Rich for well over a year and thus it was "in the movant's possession at the time of the initial hearing." *Dickerson*, 166 F. 3d. at 678. Mr. Rich makes no effort to provide a reason,

much less a legitimate one, explaining why he failed to bring this statement to the Court's attention at the evidentiary hearing, or in the arguments made by the parties thereafter.[3]

Even if Mr. Rich had presented a legitimate reason for the failure to raise his alleged statement to counsel at last month's motions hearing (or soon thereafter), it would not change my ruling on the motion to suppress. In support of his claim that it would, Mr. Rich selectively quotes the Court's May 23, 2024, memorandum opinion by repeating my observation that Mr. Rich offered "no corroborating evidence for his testimony, and that there is no indication that he had ever raised similar concerns at any previous time during the nearly three-year history of this case." ECF 100, at 3 ¶ 5 (quoting ECF 89, at 7). Putting aside whether a statement by Mr. Rich to his prior counsel does, in fact, corroborate the testimony Mr. Rich provided at the hearing, a change to the portion of my opinion highlighted by Mr. Rich would have no effect. Even if I were to excise my passing (and still accurate)[4] observation about the evidence presented at the hearing and motions filed in the case, ample reasons remain to discredit Mr. Rich's testimony.

---

[3] To be clear, Mr. Rich's counsel attempts to explain why he is unable to provide an affidavit from Mr. Rich's prior counsel memorializing Mr. Rich's alleged statement. ECF 100, at 2 ("Counsel has not received an Affidavit from [prior counsel] due to the need to file this motion as quickly as possible."). But the statement to prior counsel by Mr. Rich, if it was made, exists regardless of whether there is an affidavit memorializing it. The statement was known to Mr. Rich for well over a year prior to the motions hearing and yet was not mentioned at the time of the hearing. Though counsel notes that he did not make an inquiry of prior counsel because he did not realize it was needed until he reviewed my Memorandum Opinion (ECF 89), Mr. Rich admits that "counsel for the government spent considerable time cross-examining Mr. Rich about [the failure to previously claim that officers had threatened or coerced him into giving a statement]." *Id.* Thus, even without the benefit of my opinion, Mr. Rich knew that his failure to previously raise the alleged coercion at the hands of the agents was an issue and he still chose not to address it until now.

[4] Though he alleges that he mentioned to his prior counsel that agents made threats to his loved ones, Mr. Rich did not file a motion seeking to suppress his statement until well over a year and a half later. ECF 70. The belated motion he did file was boilerplate in nature and raised no explicit claim that he, or anyone close to him, had been threatened by officers. ECF 70, at 1–4. Indeed, the only analysis offered vaguely alleged that "[t]he statement given by Mr. Rich while in police custody was not his knowing, voluntary and intelligent act and the Court should suppress this

As noted in my opinion, Mr. Rich claimed in his hearing testimony that his *Miranda* rights

were not read to him while he waited in a police vehicle outside his home. ECF 89, at 7. However,

in his recorded interview, a transcript of which was provided to the Court by Mr. Rich (and without

any challenge to its accuracy), Mr. Rich appeared to admit that he had, in fact, been read his rights

"earlier in the vehicle" and was being advised of his rights "again." *See* ECF 71-1. at 2 (Transcript

of Interview). This discrepancy alone gave me ample reason to doubt Mr. Rich's credibility. I

also note that Agent Beltran's alleged threats to Mr. Rich were belied by the fact that both Agent

Beltran and Agent Maddox appeared to scrupulously honor Mr. Rich's right to counsel when Mr.

Rich initially invoked it. *Id.* at 3. Stated differently, that Agent Beltran would pivot from honoring

Mr. Rich's right to counsel to apparently threatening Mr. Rich (on multiple occasions) to secure a

recorded statement struck me as highly unlikely, particularly in light of Agent Beltran's

dispassionate testimony to the contrary and the fact that Agent Maddox, rather than Agent Beltran,

was the main agent assigned to the matter. That Agent Beltran apparently stood to gain little from

Mr. Rich's decision to give a statement further lessened any incentive Agent Beltran had to

threaten Mr. Rich.[5] Further, Mr. Rich's mannerisms and demeanor during the evidentiary hearing

---

statement and any evidence derived therefrom." *Id.* at 4. The Government filed a response claiming that Mr. Rich had voluntarily re-engaged with agents after initially invoking his *Miranda* rights. ECF 77, at 9–10. Mr. Rich never sought leave to file a reply. Further, Mr. Rich offered no additional evidence at the hearing beyond his own testimony. As such, the statement is correct as written even if Mr. Rich made the alleged statement to his prior counsel.

[5] In fact, it was Agents Maddox and Beltran that confirmed that Mr. Rich was, in fact, invoking his right to counsel. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994). Here, Mr. Rich asked if he could "get an attorney," a request that some may interpret as "ambiguous or equivocal." ECF 71-1, at 3. Nevertheless, Agents Maddox and Beltran quickly confirmed that Mr. Rich was seeking the assistance of counsel and immediately terminated the initial interview. *Id.*

also led me to discount the veracity of his testimony. For example, Mr. Rich sat hunched over, groaning and grimacing in apparent discomfort throughout the testimony of the agents but exhibited little discomfort when he presented his own testimony from the witness stand. In fact, Mr. Rich often took a combative tone with the Government while remaining focused and upright. Thus, even assuming that Mr. Rich told his prior counsel[6] that an agent had told Mr. Rich that his fiancée "could be arrested and charged with criminal offenses and [that his] children would have to be placed in someone's custody," ECF 100, at 2, my credibility determination would not change. As such, Mr. Rich has failed to establish that the statement he allegedly made to his former attorney has any material value, and the hearing cannot be reopened on this ground.

Mr. Rich also asks the Court to reopen the hearing because his fiancée, "Sarah Diggs, has confirmed to [Mr. Rich's] counsel that she saw Mr. Rich on the ground when she exited the home with a child in her arms." ECF 100, at 2. Mr. Rich recalls that he testified "that he had been placed on the ground after complying with law enforcement to exit his home and was on the ground for some 15 minutes." *Id.* Mr. Rich also recalls that "[Special Agent] Maddox testified he did not see [Mr. Rich] on the ground at any time." *Id.* Based on Ms. Diggs's recollection, Mr. Rich now seeks to "attempt to interview every Baltimore County Police Officer who participated in the arrest of Mr. Rich on October 13, 2021, in order to corroborate the testimony of Mr. Rich who testified he was placed on the ground." *Id.*

Like the alleged statement to counsel, Mr. Rich makes no effort to explain why he did not present Ms. Diggs's testimony at the May 9, 2024, motions hearing. Mr. Rich does not claim that

---

[6] It also bears noting that when the Government sought to question Mr. Rich at the hearing about his interactions with prior counsel—interactions that likely included this alleged statement—his present counsel vigorously objected. The Court sustained the objection and repeatedly instructed Government counsel not to ask about conversations with prior counsel. Mr. Rich did not object to this ruling and, as noted above, never sought to introduce any statements to prior counsel.

Ms. Diggs was unavailable or unwilling to testify at the hearing. Nor does he claim that she was unable to provide an affidavit in the weeks after the hearing, before the motion was decided. Mr. Rich similarly fails to explain why he did not seek to interview officers prior to the hearing.[7] As such, Mr. Rich has failed to provide a legitimate reason for the failure to present this testimony at the evidentiary hearing, and reopening the hearing is not warranted.

As to materiality, Mr. Rich correctly notes that any discrepancy in testimony between Mr. Rich and Agent Maddox was not "referenced in the Court's Opinion." ECF 100, at 2. This is true. *See* ECF 89, at 1–10. The Court did not put much stock in the apparent collateral dispute about Mr. Rich's detention status *before* he made statements to Agents Maddox and Beltran, especially given the testimony from Agents Maddox and Beltran that they arrived on the scene after the Baltimore County Police were already present. There is no dispute that Mr. Rich was in custody when he gave his statements. Instead, the key issue at the hearing was whether Mr. Rich re-engaged with officers after he initially invoked his right to counsel. Even assuming Ms. Diggs were to testify that Mr. Rich was placed on the ground, and assuming further that this testimony was corroborated by other law enforcement officers who also witnessed Mr. Rich's arrest, I would not change my conclusion that Mr. Rich re-initiated contact with agents after initially invoking his right to counsel. ECF 89, at 9. Nor would it disturb my finding that Mr. Rich's statement was voluntary and that he knowingly and voluntarily waived his *Miranda* rights prior to speaking with agents. *Id.* at 10.

Though not styled as a motion to reconsider, I note that even assuming the truth of the claims made in the instant motion—that Mr. Rich told prior counsel that he had been threatened

---

[7] Even assuming, as is often the case, that officers would not respond to questions posed by defense counsel, Mr. Rich could have asked the Court to issue a subpoena compelling them to testify at the hearing. Mr. Rich made no effort to do so and provides no reason for his decision not to.

6

by Agent Beltran and that Ms. Diggs (and perhaps others) would testify that Mr. Rich was placed on the ground outside his home—I still would not grant such relief.

The Federal Rules of Criminal Procedure do not include a provision for motions for reconsideration. However, trial courts retain "discretion to reconsider [their] rulings prior to sentencing, and may rely on the Federal Rules of Civil Procedure to do so." *United States v. Gibson*, No. 323CR00091FDWDCK, 2024 WL 1980134, at *1 (W.D.N.C. May 2, 2024) (noting that Fed. R. Civ. P. 59(e) governs motions to reconsider in criminal cases). A Rule 59(e) motion is permitted: (1) to address a change in controlling law; (2) to account for new evidence; and (3) to prevent a manifest injustice. *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). While there are "circumstances when a motion to reconsider may perform a valuable function," it is well established that it is improper to use such a motion to "ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Bohannan Roofing, Inc.*, 99 F.R.D. 99 101 (E.D.Va.1983). That the scope of conditions in which a motion to reconsider is appropriate is so narrow serves a valuable purpose "because '[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience.'" *Wonasue v. University of Maryland Alumni Association*, Civil No. PWG-11-3657, 2013 WL 6178041, at *1 (D. Md. Nov. 22, 2013) (citations omitted).

Mr. Rich provides no change in controlling law and offers no example of a manifest injustice that would prevail in the absence of reconsideration. Instead, he proffers additional evidence in support of his motion that he could have offered at the May 9, 2024, hearing, or in the weeks thereafter while he waited for a ruling on his motion. Simply calling such evidence "newly

7

discovered" does not make it so. Indeed, for the reasons noted above, all the purportedly "new" evidence cited in Mr. Rich's motion was known to him at the time of the hearing or could have been elicited at the hearing. In truth, Mr. Rich asks me to rethink the reasoning articulated in my earlier opinion, most notably my determination his testimony was incredible. *See* ECF 100, at 3 ("The Court did not credit Mr. Rich's testimony . . . , but should have done so."). Mr. Rich is correct on one point: I did not find Mr. Rich's "testimony that Agent Beltran reengaged him and threatened him . . . to be credible." ECF 89, at 6. I still do not find his testimony credible and thus decline to reconsider my prior decision.

Mr. Rich's Motion to Reopen his suppression hearing, ECF 100, is **DENIED**.

Dated: June 11, 2024

/s/
Brendan A. Hurson
United States District Judge